# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH F. LAFFEY,<br><br>    Petitioner,<br><br>vs.<br><br>JERRY BURT, Warden,<br><br>    Respondent. | No. C04-1004-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

## *I. INTRODUCTION*

In a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, the petitioner John Laffey is challenging his convictions, following a jury trial, on two counts of second-degree sexual abuse with children under the age of twelve, and the sentence imposed on those convictions. The facts of the case, as described by the Iowa Supreme Court, are as follows:

> Laffey's convictions arise from an incident allegedly occurring in early December 1996, when he engaged two young girls, ages five and six, in a sex act. Neither girl told anyone about what had happened, however, until the following March. At that time, the girls initially stated that they had seen the defendant without his pants on and that he was "playing with his crotch." Upon further questioning by employees at the Child Protection Center (CPC), the girls revealed that Laffey had them touch and stroke his penis while he was lying on the bed.

> When confronted with these allegations, Laffey related an incident that had occurred when the girls had stayed overnight at his home. He stated that the next morning after he had showered, the children entered his bedroom before he had put his pants on. He told the girls to leave and they did, according to Laffey.

> The State charged Laffey with two counts of second-degree sexual abuse. At trial, the victims testified consistently with their interviews at CPC. The jury returned guilty verdicts on both charges. The judge sentenced the defendant to indeterminate, twenty-five-year terms of imprisonment for each crime, ordering that these sentences be served consecutively.

*State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999).

Laffey raises two issues: (1) whether the testimony of the two victims was so "inconsistent, improbable and incredible that a rational fact finder could not find proof of guilt" under federal due process standards; and (2) whether the imposition of consecutive sentences under the facts of this case violated the Eighth Amendment's prohibition of cruel and unusual punishment.

On August 31, 2005, Laffey filed a brief in support of his request for habeas corpus relief. (Doc No. 34) On September 16, 2005, the respondent filed his brief on the merits.[1] (Doc. No. 36) The court now considers the matter to be fully submitted.

## II. LEGAL ANALYSIS

### A. Standard of Review

To prevail in a habeas action, the petitioner must show the decision of the state court on the issue raised "was either (1) 'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)).

---

[1] The nominal respondent has changed since this action was filed due to a personnel shift within the Iowa Department of Corrections. Jerry Burt is now Warden of the facility in which Laffey is incarcerated.

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of clearly-established Supreme Court precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because

3

> that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the state court decision was not contrary to clearly established federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To grant habeas relief, "the state court's application must have been objectively unreasonable. [Citation omitted.] [F]acts found by the state court are presumed to be correct unless the applicant can rebut the presumption by clear and convincing evidence." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

Thus, to prevail here, Laffey must show the Iowa courts (1) reached a decision contrary to applicable Supreme Court precedents on a question of law; (2) correctly identified the applicable law, but then failed to apply the law reasonably to the facts of this case; or (3) made its decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. It is not enough for the federal court to conclude, in its independent judgment, that it would have applied federal law differently from the state court.

### B. Due Process Claim

Laffey argues the testimony of the two victims was so "inconsistent, improbable and incredible that a rational fact finder could not find proof of guilt" under federal due process standards. The Iowa Supreme Court addressed this claim as follows:

> Upon our review of the record, we conclude the evidence is adequate to support the jury's finding that the

4

defendant performed a sex act with the minor victims. It is true that the girls did not reveal the sexual abuse until their interviews at [the Child Protection Center] and that the employees there used leading questions to elicit information from the children. Nevertheless, the jury could have reasonably believed that the later version of the incident was more believable than the initial story that the girls had merely seen the defendant without any pants on.

      The girls' descriptions of the circumstances of the sex act itself were detailed and consistent: Laffey only had on a t-shirt; he had them get on the bed with him; he had both of them stroke his penis; and he wiped himself off with a towel after he "went to the bathroom" on his stomach. Admittedly, there were also inconsistencies in their testimony: they disagreed as to whether one or both of them were also undressed, whether the defendant's wife was home, and whether the discharge from the defendant's penis was yellow or white. These differences, however, do not necessarily render their testimony with respect to the nature of their contact with the defendant unbelievable. Therefore, the victims' credibility was for the jury to decide. *See State v. Romeo,* 542 N.W.2d 543, 549-50 (Iowa 1996) (rejecting insufficiency-of-the-evidence claim despite inconsistencies in the testimony of the two primary witnesses against the defendant, holding it was for the jury to decide if the witnesses were credible); *State v. Tonn,* 441 N.W.2d 403, 404 (Iowa App. 1989) (finding evidence sufficient to sustain the defendant's convictions of third-degree sexual abuse despite inconsistencies and mistakes in the victims' testimony).

      We also reject the defendant's argument that the confusion among the witnesses as to when this incident occurred fatally undermines the jury's finding of guilt. Although the witnesses disagreed as to the date that the children stayed at the Laffey home, no one disputed that the girls had on one occasion spent the night there. Under these circumstances, any uncertainty as to the precise date is immaterial. *See State v. Rankin,* 181 N.W.2d 169, 172 (Iowa 1970) (stating that the State is not required to prove the exact date of a sexual offense); *State v. Brown,* 400 N.W.2d 74, 77

5

> (Iowa App. 1986) ("The date fixed in the indictment or information for the commission of a crime is not material, and a conviction can be returned upon any date within the statute of limitations. . . ."); *State v. Griffin,* 386 N.W.2d 529, 532 (Iowa App. 1986) (holding statute defining crime of second-degree sexual abuse "does not make a particular time period a material element of the offense").

*State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999).

Laffey's argument on this issue is premised primarily on the way in which the State's evidence was developed. He argues, "There is no question that either of [the victim's] stories separately would support both convictions for the charge of Sexual Abuse in the Second Degree. The reasonableness and rationality of the evidence starts to break down when the two stories are compared with each other. Still, Mr. Laffey would probably not even have raised this issue if the major inconsistencies were the only basis for an argument. The evidence that drives this record into the realm of an unreasonable and irrational verdict is the evidence as to how the stories were created." (Doc. No. 34, pp 13-14)

Laffey points out that when the girls were taken to the Child Protection Center three months after the incident, their stories were consistent and neither one implicated the defendant in an unlawful touching. They only accused him of sexual abuse after they were asked leading questions at the CPC. Laffey also notes that one of the girls admitted to seeing a movie of "naked people kissing," and her father admitted to having pornographic movies in his living room. (*Id.* at p. 14)

The questions raised by Laffey about the credibility of the victims and the manner in which their testimony was developed by the State do not rise to a constitutional violation. Indeed, the court finds Laffey's argument misses the mark. Laffey claims the manner in which the victims' testimony was developed, coupled with minor inconsistencies in the victims' accounts of the events, resulted in facts that no reasonable fact finder could

6

determine established proof of guilt. "To prevail on this due process claim, he must demonstrate that 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979)). Applying this standard in the context of a challenge to the sufficiency of the state's evidence, the scope of review is "'extremely limited. . . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" *Id.* (quoting *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)).

At trial, Laffey was free to argue that the victims' testimony was unreliable based on the manner in which it was developed. He further was free to argue that inconsistencies in the victims' statements, coupled with the leading questions posed by the child protective services worker, raised sufficiently reasonable doubt concerning his guilt that the jury should have found him innocent of the charges. However, these arguments do not demonstrate that "no rational trier of fact" could have found him guilty beyond a reasonable doubt, nor do they overcome the presumption that the jury considered these inconsistencies in the evidence, and resolved them in favor of the State. *See id.* The Iowa Supreme Court similarly noted there were some inconsistencies in the evidence, but held it was within the jury's sole province to resolve those inconsistencies. The Iowa court held Laffey had failed to show the evidentiary inconsistencies were sufficient to undermine the jury's finding of guilt, and this court agrees. Laffey has failed to demonstrate that the Iowa court unreasonably determined the facts or unreasonably applied clearly-established federal law in upholding his conviction.

## C. *Eighth Amendment Claim*

Laffey next argues the imposition of consecutive sentences under the facts of this case violated the Eighth Amendment's prohibition of cruel and unusual punishment. He contends the decision of the Iowa Supreme Court denying this claim resulted from an unreasonable application of clearly-established federal law as determined by the United States Supreme Court.

In deciding this issue, the Iowa Supreme Court held as follows:

> The defendant claims that the court's decision to make his sentences run consecutively violates the Eighth Amendment's prohibition of cruel and unusual punishment. *See* U.S. Const. amend. VIII. He points out that he will have to serve forty-two and one-half years before he can be released. *See* Iowa Code §§ 902.12, 903A.2 (1997). Because he will be eighty years old by then, he characterizes his punishment as a lifetime sentence. Laffey also argues that his punishment is significantly more severe than that imposed for other, more grievous, crimes of sexual abuse. We review this constitutional claim de novo. *See State v. Hunter,* 550 N.W.2d 460, 462 (Iowa 1996).
>
> We recently considered a similar claim in *State v. August,* 589 N.W.2d 740 (Iowa 1999). In that case, the defendant was also sentenced to two consecutive, twenty-five year terms of incarceration. *August,* 589 N.W.2d at 741. In deciding whether these sentences violated the Eighth Amendment, we compared the sentences with the gravity of the defendant's crimes, viewed objectively. *Id.* at 743. We held that only if such an examination allows an inference of gross disproportionality, would the court engage in a detailed consideration of the proportionality of the offense to the sentence, including a comparison of the punishment for this crime with the sentences imposed on other criminals. *Id.* at 742-43 (referring to three-factor test set out in *Solem v. Helm,* 463 U.S. 277, 292, 103 S. Ct. 3001, 3011, 77 L. Ed. 2d 637, 650 (1983)).
>
> In *August,* we held that a twenty-five-year term of imprisonment for second-degree kidnapping, to be served

8

consecutively to a twenty-five-year term for first-degree robbery, did not violate the Eighth Amendment. *Id.* at 744. We stated that "[t]here is nothing cruel and unusual about punishing a person committing *two* crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing." *Id.*

The same result is mandated here. Laffey committed two serious crimes – the sexual abuse of two young children. That severe and lasting emotional harm can result to these helpless victims makes the crime especially egregious and deserving of a severe punishment. Therefore, we conclude Laffey's consecutive sentences do not give rise to an inference of gross disproportionality. The fact that these sentences may mean that Laffey serves the remainder of his life in prison is not a factor in our analysis. *See id.* at 743-44 (rejecting the defendant's request that an individualized assessment of the severity of the punishment be made). In addition, this conclusion makes it unnecessary to evaluate the severity of Laffey's sentence as compared to the sentences imposed on other criminals in this state. *See id.* at 742 (holding that *Solem* factors are considered only when the initial examination of the crime and punishment gives rise to an inference of gross disproportionality).

*Laffey*, 600 N.W.2d at 61-62.

Laffey urges the court to apply the *Solem* factors referred to by the Iowa court in its opinion. In *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), Justice Powell, writing for a 5-4 majority, determined that a sentence imposed on a defendant was "cruel and unusual" under the Eighth Amendment to the Constitution. The case involved a defendant who had been convicted of six nonviolent felonies, and then pled guilty to a charge of uttering a "no account" check for $100. Under a South Dakota recidivist statute, he was sentenced to life imprisonment with no possibility of parole.

Justice Powell determined the sentence imposed on the defendant violated the Eighth Amendment, holding the Eighth Amendment's "cruel and unusual punishment" clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to

9

the crime committed." *Id*. at 284, 103 S. Ct. at 3006. In so ruling, Justice Powell determined that this principle of "proportionality" applies to felony prison sentences. *Id*. at 288, 103 S. Ct. at 3009. He summarized this holding as follows:

> In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.

*Id*. The Court then devised the following three-part test to determine proportionality:

> In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id*. at 292, 103 S. Ct. at 3011.

This subject was addressed again by a sharply divided court in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). In that case, the defendant was sentenced to life in prison without the possibility of parole for possessing 672 grams of cocaine. Notably, *Harmelin*, involved a claim that the sentence was "significantly disproportionate to the crime," *Harmelin*, 501 U.S. at 961, 111 S. Ct. at 2684, while *Solem* involved a recidivist statute.[2] Justice Scalia, joined by Chief Justice Rehnquist, delivered the judgment of the Court denying the defendant's claim. These two justices were of the opinion that *Solem* was decided wrongly, and they rejected any Eighth Amendment proportionality guarantee. *Harmelin*, 501 U.S. at 965, 111 S. Ct. at 2686. Three justices, Justices Kennedy, O'Connor, and Souter, decided that a court first should

---

[2]The present case involves the imposition of consecutive sentences.

10

determine whether a sentence is "grossly disproportionate" to the crime. If not, there would be no Eighth Amendment violation. Only if that question were answered affirmatively would these justices apply the second and third factors in the *Solem* test. *Harmelin*, 501 U.S. at 1005, 111 S. Ct. at 2707. They reasoned "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S. Ct. at 2705. Four justices, Justices White, Blackmun, Stevens, and Marshall, supported the continued viability of the three-part *Solem* analysis. *Harmelin*, 501 U.S. at 1021, 1027, 111 S. Ct. at 2716, 2719.

Thus, after *Harmelin*, four justices supported the three-part proportionality analysis from *Solem*, three justices found the Eighth Amendment forbids only extreme sentences that are "grossly disproportionate" to the crime, and two justices rejected any proportionality analysis under the Eighth Amendment.

The Supreme Court next addressed this question in two cases decided the same day, *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003), and *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). These cases were decided four years after the Iowa Supreme Court had addressed this issue in Laffey's appeal, but nevertheless, for the reasons stated below, they are instructive here.

In *Ewing*, a case involving a California recidivist statute, Justice O'Connor, joined by Chief Justice Rehnquist and Justice Kennedy, delivered the judgment of the Court. Justice O'Connor concluded the "narrow proportionality principle" spelled out by Justices Kennedy, O'Connor, and Souter in *Harmelin* applies to noncapital sentences. *Id.* at 23-24, 123 S. Ct. at 1186-87. Justices Scalia and Thomas concurred in the judgment, but rejected any Eighth Amendment proportionality guarantee. *Id.* at 31-32, 123 S. Ct. at 1191. Justices Stevens, Souter, Ginsburg, and Breyer dissented, arguing the three-part *Solem* analysis should still be applied. *Id.* at 35, 123 S. Ct. at 1193.

In *Lockyer*, the Supreme Court faced the same question in the context of a section 2254 action. The defendant, Andrade, was charged with two felony counts of "petty theft with a prior conviction." He was convicted by a jury, and under a California three-strikes law, he was sentenced to two consecutive terms of 25 years to life. Andrade argued to the Supreme Court that "two consecutive terms of 25 years to life for stealing approximately $150 in videotapes [was] grossly disproportionate in violation of the Eighth Amendment." He also maintained "the state court decision affirming his sentence [was] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id*. at 70, 123 S. Ct. at 1172 (citing 28 U.S.C. § 2254(d)(1)).

Justice O'Connor, writing for five justices, noted the difficulty in applying the § 2254(d)(1) standard to cases in this area of the law:

> Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *See id.,* at 405, 413, 120 S. Ct. 1495; *Bell v. Cone,* 535 U.S. 685, 698, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). In most situations, the task of determining what we have clearly established will be straightforward. The difficulty with Andrade's position, however, is that our precedents in this area have not been a model of clarity. *See Harmelin v. Michigan,* 501 U.S., at 965, 111 S. Ct. 2680 (opinion of SCALIA, J.); *id.*, at 996, 998, 111 S. Ct. 2680 (KENNEDY, J., concurring in part and concurring in judgment). Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow. *See Ewing v. California*, [] 538 U.S., at 20-23, 123 S. Ct. 1179.

*Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172-73. Justice O'Connor then commented, "Through this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id*. at 72, 123 S. Ct. at 1173. Indeed, this was the position of three Justices *Harmelin*, and was part of the analysis of the four other Justices in *Harmelin* who applied the *Solem* three-part test.

In the present case, as in *Lockyer*, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73, 123 S. Ct. at 1173. This is the standard applied by the Iowa Supreme Court in Laffey's case. That court cited its earlier decision in *State v. August*, 589 N.W.2d 740 (Iowa 1999), in which the defendant also was sentenced to two consecutive, twenty-five year terms. The court noted that in *August*, in deciding whether those sentences violated the Eighth Amendment, it had compared the sentences with the gravity of the defendant's crimes, viewed objectively, and had held that "only if such an examination allows an inference of gross disproportionality, would the court engage in a detailed consideration of the proportionality of the offense to the sentence, including a comparison of the punishment for this crime with the sentences imposed on other criminals." *Laffey*, 600 N.W.2d at 61 (citing *August*, 589 N.W.2d at 742-43, in turn citing "the three-factor test set out in *Solem v. Helm,* 463 U.S. 277, 292, 103 S. Ct. 3001, 3011, 77 L. Ed. 2d 637, 650 (1983))." The Iowa Supreme Court found no gross disproportionality in either *August* or *Laffey*.

Laffey argues the three-part test set out in *Solem* was approved by five justices and was not overruled by a majority of the justices in *Harmelin*, so it should have been binding on the Iowa Supreme Court. (Doc. No. 34, pp. 17-21) He argues, therefore, that it was objectively unreasonable for the Iowa Supreme Court to not apply the *Solem* test to the

facts of his case. *Id*. The problem with this argument is that the Iowa Supreme Court in *Laffey* was in precisely the same situation as was Justice O'Connor when, on behalf of five justices of the United States Supreme Court, she wrote the opinion of the Court in *Lockyer*. Justice O'Connor decided the Ninth Circuit Court of Appeals had erred when, in 1999, it granted the defendant relief under the three-part *Solem* test. Instead, the Supreme Court held that after *Harmelin*, the second two factors in the *Solem* test should be applied only if the sentence imposed is grossly disproportional to the crime.

In light of the holding of the Supreme Court in *Lockyer*, this court finds the Iowa Supreme Court was correct in applying the gross disproportionality standard in reviewing the sentences imposed on Laffey. Nothing in this record suggests the Iowa Supreme Court applied this standard improperly to the facts of this case.

The United States Supreme Court has stated, "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77, 123 S. Ct. at 1175. In applying this principle in this case, the Iowa Supreme Court did not act contrary to clearly-established federal law as decided by the Supreme Court, nor did it unreasonably apply that law to the facts of Laffey's case.

### III. CONCLUSION

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[3] to the Report and Recommendation in accordance with Title 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.2, within

---

[3] Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

ten days of the service of a copy of this Report and Recommendation, that Laffey's petition for writ of habeas corpus be **denied**.

**IT IS SO ORDERED.**

**DATED** this 12th day of April, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT